IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


MITRI HABASH, et al.                         :
     Plaintiffs,                              :
                                             :
         v.                                    :          CIVIL NO. L-04-2338
                                             :
CITY OF SALISBURY, MARYLAND,          :
et al.                                        :
     Defendants.                              :


**MEMORANDUM**

**I.      Introduction**

This is a civil rights action brought by Mitri Habash and Club Vissage, Inc. against

Defendants, the City of Salisbury, Allan J. Webster,[1] Aaron B. Hudson,[2] Wicomico County, the

Wicomico County Board of License Commissioners ("Licensing Board"),[3] and Licensing Board

members Leo McNeil, W.C. Holloway, Shirley C. Gray, and Greg Rickards.[4]  Plaintiffs allege

that the Defendants misused their authority to drive Habash's nightclub, which was

predominantly patronized by African-Americans, out of business.

The Defendants have moved to dismiss the Complaint under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  In deciding a motion under that rule, the Court must assume that all of

the allegations of fact alleged in the Complaint are true.  The Complaint cannot be dismissed

---

[1] Webster is Chief of the City of Salisbury Police Department.

[2] Hudson is an officer in the City of Salisbury Police Department.

[3] The Licensing Board, which issues alcohol licenses to establishments within Wicomico County, has the power to suspend, revoke, and impose fines on licenses.

[4] Plaintiffs sue Webster, Hudson, McNeil, Holloway, Gray, and Rickards in both their individual and official capacities.

unless it appears beyond all doubt that the Plaintiffs can prove no set of facts that would entitle

them to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Labram v. Havel, 43 F.3d 918,

920 (4th Cir. 1995).  With the exception of the City of Salisbury, the Defendants cannot meet

this standard.  Accordingly, the motions will be denied and the case will proceed to discovery.

The Defendants will have an opportunity to test the strength of the Plaintiffs' allegations by

filing summary judgment motions after discovery is over.

The Policymaker Defendants (the City of Salisbury, Wicomico County, the Licensing

Board, and Chief Webster, Officer Hudson, and the Licensing Board members in their official

capacities) have moved to bifurcate the claims against them.  Under the civil rights law, there is

no respondeat superior (master-servant) liability.  In order to prevail against a policymaker, a

plaintiff must prove that an "active" defendant (e.g., a police officer) violated its constitutional

rights while acting under a custom, practice, or policy of the "inactive" policymaker (e.g., a

city).  For reasons of economy, it is the practice in this District to stay litigation of custom and

policy claims until a plaintiff has proven that his rights were violated in the first place.  Thus, the

claims against the so-called "inactive" Policymaker Defendants will be stayed.

**II.     The Pending Motions**

Now pending are:

(i)     Chief Webster and Officer Hudson's motion to dismiss, or, in the alternative, to bifurcate;

(ii)    the City of Salisbury's motion to dismiss or, in the alternative, to bifurcate;

(iii)   Wicomico County's motion to dismiss; and

(iv)    the Licensing Board and the Licensing Board members' motion to dismiss or, in the alternative, to bifurcate.

Because the issues have been fully briefed, the Court will dispense with a hearing.  See

Local Rule 105.6 (D. Md. 2004).  For the reasons stated herein, the Court will, by separate Order

filed this date:

> (i)     GRANT IN PART AND DENY IN PART Chief Webster and Officer Hudson's
> motion to dismiss or, in the alternative, to bifurcate;
>
> (ii)    GRANT IN PART AND DENY IN PART the City of Salisbury's motion to
> dismiss or, in the alternative, to bifurcate;
>
> (iii)   DENY Wicomico County's motion to dismiss;
>
> (iv)    GRANT IN PART AND DENY IN PART the Licensing Board and the Licensing
> Board members' motion to dismiss or, in the alternative, to bifurcate; and
>
> (v)     BIFURCATE Counts I, II, III, and IV against the City of Salisbury, Wicomico
> County, the Licensing Board, and Chief Webster, Officer Hudson, and the
> Licensing Board members in their official capacities for purposes of both
> discovery and trial.

## III.    Background

From September 2000 to May 2003, Habash owned and operated Club Vissage in

Salisbury, Maryland.  Plaintiffs allege that Defendants took the following racially motivated

actions in relation to the club:

> (i)     Beginning in January 2002, when Habash called the City of Salisbury police
> department regarding fights and other problems typical of nightclubs, officers
> responded slowly, and complained to him that he called too frequently;
>
> (ii)    In March 2002, the Licensing Board issued a new policy prohibiting "all you can
> drink" specials, which was targeted at Club Vissage and Club Andromeda,
> another nightclub catering to a predominantly African-American clientele.  This
> policy caused Club Vissage's business to substantially decline;
>
> (iii)   In March 2003, Chief Webster advised Habash that he should consider changing
> the format of music at his club from hip-hop to country and western in order to
> reduce the number of calls to police.  Chief Webster threatened Habash with
> criminal prosecution if the calls to police did not decrease; and

3

      (iv)     Around that same time, Rickards, Chief Inspector of the Licensing Board, threatened Habash with a show cause hearing if he attempted to renew Club Vissage's liquor license.

Allegedly as a result of Defendants' actions, Habash was forced to close Club Vissage.

The Complaint further alleges that in May 2004, after Habash closed his nightclub, Officer Hudson spread rumors that Habash was a drug dealer who had been arrested on drug charges.

The Complaint asserts federal civil rights claims under 42 U.S.C. § 1983 (Counts I and II), 42 U.S.C. § 1981 (Count III), and 42 U.S.C. § 1985 (Count IV), and a state common law claim for defamation (Count V).[5]

## IV.    Standard

Ordinarily, a complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of its claim which entitle it to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995).  The liberal pleading requirements of Rule 8(a) demand only a "short and plain" statement of the claim.  In evaluating such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to Plaintiffs.  See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under

_____

[5] Plaintiffs assert Count V, the defamation claim, against Officer Hudson and the City of Salisbury only.  Plaintiffs assert all other claims against all Defendants.

any legal theory which might plausibly be suggested by the facts alleged." Edwards v. City of

Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quotation omitted).

## V.   Analysis

### A.   Counts I, II, and III: 42 U.S.C. §§ 1983, 1981[6]

In their motions to dismiss, Defendants assert that Counts I, II, and III of the Complaint

are deficient against the City of Salisbury, Wicomico County, the Licensing Board, and Chief

Webster, Officer Hudson, and the Licensing Board members in their official capacities.[7]

Defendants argue that Plaintiffs have failed to make any of the allegations required by Monell v.

New York Department of Social Services, 436 U.S. 658 (1978), to support a claim of municipal

liability.

Defendants are correct that municipalities cannot be held liable under a theory of

respondeat superior.  Municipal liability does exist, however, if the Defendants' execution of an

official policy or custom caused the alleged constitutional injury.  Monell, 436 U.S. at 694.   A

plaintiff may establish a government "custom" by showing that "a particular practice 'is so

persistent and widespread and so permanent and well settled as to constitute a custom or usage

---

[6] As a preliminary matter, Section 1983 is the enforcement vehicle for all race discrimination claims under Section 1981.  See 42 U.S.C. § 1983; Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733-37 (1989) (explaining that Section 1983 provides the exclusive federal remedy for the violation of rights guaranteed by Section 1981).  Thus, a Section 1981 claim in effect merges with Section 1983, and courts treat the claims as a single claim.  Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth., 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004).

[7] Plaintiffs' claims against Chief Webster, Officer Hudson, and the Licensing Board members in their respective official capacities are identical to the claims asserted against the City of Salisbury and the Licensing Board.  See Pathways Psychosocial v. Town of Leonardtown, 133 F. Supp. 2d 772, 780 (D. Md. 2001); Jones v. Ziegler, 894 F. Supp. 880, 889 n.7 (D. Md. 1995).

with the force of law.'" <u>Simms ex rel. Simms v. Hardesty</u>, 303 F. Supp. 2d 656, 670 (D. Md.

2003) (quoting <u>Carter v. Morris</u>, 164 F.3d 215, 218 (4th Cir. 1999)).

A local governmental policy can be established through a local ordinance or regulation or

through the act or omission of an individual with "final authority to establish municipal policy

with respect to the action ordered." <u>Love-Lane v. Martin</u>, 355 F.3d 766, 782 (4th Cir. 2004).

Cases have held that an equal protection violation may exist if there is a "municipal custom of

enforcing laws in a manner to disadvantage disfavored minorities." <u>Thompson v. Mayor and

Town Council</u>, 2001 WL 436158, at *2 (D. Md. Apr. 13, 2001) (citing <u>Ricketts v. City of

Columbia</u>, 36 F.3d 775, 779 (8th Cir. 1994)).          .

The Complaint sufficiently alleges that the discriminatory actions that harmed the

Plaintiffs were part and parcel of a municipal policy or custom.  Plaintiffs claim, <u>inter alia</u>, that

they were injured by (i) the City of Salisbury's custom and practice of responding more slowly

to Habash's calls for police assistance, and (ii) Wicomico County and the Licensing Board's

practice of targeting hip-hop clubs in an attempt to shut them down because of their

predominantly African-American patronage.  Accordingly, the Court will DENY Defendants'

motions to dismiss Counts I, II, and III of the Complaint.

**B.      Count IV: 42 U.S.C. § 1985**

**1.      Plaintiffs State a Claim Under Section 1985**

In Count IV of the Complaint, Plaintiffs assert that Chief Webster, Salisbury Police

Department officers, and Rickards conspired to shut down Club Vissage because of its

predominantly African-American clientele.  As explained by the Fourth Circuit, to state a claim

for conspiracy under Section 1985, a plaintiff must prove:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific
class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the
equal enjoyment of rights secured by the law to all, (4) and which results in injury
to the plaintiff as (5) a consequence of an overt act committed by the defendants
in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citations omitted).  Further, "a claimant

must show an agreement or a 'meeting of the minds' by defendants to violate [his] constitutional

rights."  Id. at 1377.

Plaintiffs allege that Chief Webster and Rickards "had various discussions about Vissage

and exchanged information about how to close the club down and coordinate efforts to achieve

this end."  At this stage of the proceedings, and accepting all of Plaintiffs' contentions as true,

the Court cannot conclude that Plaintiffs' allegations are plainly insufficient to establish a

conspiracy between Chief Webster and Rickards.  Although the allegations of conspiracy are

thin, it would be premature to dismiss the action.  Accordingly, the Court will DENY

Defendants' motions to dismiss Count IV of the Complaint.

### 2.    The City of Salisbury is Subject to Liability Under Section 1985

The City of Salisbury contends that it is not a "person" capable of being sued under 42

U.S.C. § 1985.  While courts have held that the federal government and federal officers are not

subject to suit under Section 1985, local government entities are liable under the statute.  See

Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979); Williams v. County of Greene, 734 F. Supp.

235, 238 (W.D. Va. 1990).  Accordingly, the City of Salisbury's argument fails.

The City of Salisbury also argues that the "intracorporate conspiracy doctrine" bars

Plaintiffs' conspiracy claim.  That doctrine is based on the rule that a conspiracy must consist of

at least two participants.  Because the acts of a corporation's agents are equivalent to the acts of

7

the corporation itself, a corporation and its agents are deemed to be one and the same.

Accordingly, for a conspiracy to exist, a corporation and its agents cannot be the only

participants.  See Buschi v. Kirven, 775 F.2d 1240, 1251-52 (4th Cir. 1985).

The "intracorporate conspiracy doctrine" does not operate to bar Plaintiffs' claim.

Plaintiffs allege that the Wicomico County Licensing Board, in addition to the City of Salisbury

and its agents, conspired to violate their civil rights.  Because the Complaint names at least two

participants to the conspiracy, the City of Salisbury's argument fails.

### C.      Count V: Defamation

In Count V, Plaintiffs assert a common law defamation claim against the City of

Salisbury and Officer Hudson based on allegedly false statements that Officer Hudson made

about Habash.  The City of Salisbury argues that, as a municipality, it is immune from a lawsuit

that is based on Officer Hudson's allegedly tortuous acts.  The Court agrees.

"[M]unicipalities are generally immune from common law tort suits when engaged in

governmental, as opposed to proprietary, acts. . . . The operation of a police force is a

governmental function.  Thus, [a municipality] is immune as to common law tort claims asserted

against it based on torts committed by its police officers."  Vincent v. Prince George's County,

157 F. Supp. 2d 588, 594-95 (D. Md. 2001) (internal quotations and citations omitted).

Accordingly, the Court will GRANT the City of Salisbury's motion to dismiss with

respect to Count V of the Complaint.

### D.      Claims Against Wicomico County, the Licensing Board, and Licensing Board Members

Wicomico County, the Licensing Board, and the Licensing Board members (in their official capacities) move to dismiss the claims against them on the ground that the Licensing Board is a state rather than local agency.  The state versus local agency distinction is important for two reasons.

First, Plaintiffs assign liability to Wicomico County based solely on the alleged control that the County exerts over the Licensing Board.  The County responds that the Licensing Board is a state agency over which it has no control.  Second, the Licensing Board and its members argue that if the Licensing Board is a state agency, all claims against it and its members, in their official capacities, are barred by the sovereign immunity doctrine.  See Cash v. Granville County Bd. of Educ., 242 F.3d 219, 222 (4th Cir. 2001) (stating that sovereign immunity extends to arms of the State and State officials, but not to counties and similar municipal corporations); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (stating that suit against a State official in his official capacity is no different from suit against the State itself).

The issue of whether the Licensing Board is a state or local agency can be resolved only through a factually-intensive inquiry.  See Harter v. Vernon, 101 F.3d 334, 337-40 (4th Cir. 1996) (stating that in the context of a sovereign immunity argument, court must consider the following factors, inter alia:  whether a judgment against the Board will affect the State treasury, whether the Board exercises a significant degree of autonomy from the State, and whether the Board is involved with local or state concerns); Rucker v. Harford County, 558 A.2d 399, 403 (Md. 1989) (stating that to determine entity's status as state or local agency, it is necessary to examine relationship between the entity and the State).  Resolution of the issue is better suited to a post-discovery motion for summary judgment.  Accordingly, Wicomico County, the Licensing

9

Board, and the Licensing Board members' motions to dismiss are DENIED WITHOUT

PREJUDICE in this regard.

### E.      Bifurcation

The "inactive" Policymaker Defendants have moved to bifurcate the claims against them.

The Plaintiffs object, arguing that (i) bifurcation will result in two trials with identical witnesses,

evidence, and parties, (ii) there are common questions of fact and law with respect to each

Defendant, and (iii) bifurcation will prejudice Plaintiffs because it will allow Defendants to "cast

the blame on one another."

Under Federal Rule of Civil Procedure 42(b), the Court may, "in furtherance of

convenience or to avoid prejudice, or when separate trials will be conducive to expedition and

economy," order separate trials of any claims or issues.  The Court has broad discretion in

deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside

only if clearly abused.  Dawson v. Prince George's County, 896 F. Supp. 537, 539 (D. Md.

1995).

In this District, bifurcation is a common procedure in civil rights cases.  See Jones v.

Ziegler, 894 F. Supp. 880, 883 (D. Md. 1995);  Marryshow v. Town of Bladensburg, 139 F.R.D.

318 (D. Md. 1991).  In cases such as this, where the liability of the individual "active"

Defendants is a prerequisite to a finding of municipal liability, the Court may stay the

proceedings against the municipality pending the determination of individual liability.  See

Marryshow, 139 F.R.D. at 319 (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).

For the following reasons, the Court finds this to be the appropriate course in this case.

Discovery into claims of active discrimination against the Plaintiffs will be relatively straightforward. Discovery will center on actions taken towards Habash and his nightclub. As in any discrimination case, the Court will permit discovery as to a reasonable number of comparable establishments, both black and white. Discovery into a City or County's customs and practices towards blacks and black-oriented businesses is potentially far broader. Such discovery need not be undertaken unless the Plaintiffs succeed on one of their active claims. If the Plaintiffs fail, bifurcation will spare both sides considerable time, effort, and expense.

Additionally, a plaintiff's success on his custom and policy claims does not add to his recovery. Success merely expands the number of defendants who are liable to pay the damages awarded by the jury. Success also imposes liability on organizations with deeper pockets than the individuals who actively committed the constitutional torts.

Despite the absence of respondeat superior liability, the employer in a civil rights case usually pays the judgment in the event of a finding of liability against an employee. Experience shows that, win or lose, most cases are resolved after the active liability phase and never reach the custom and practice phase. Hence, bifurcation makes practical sense and is normally embraced by plaintiffs and defendants alike.

Accordingly, the civil rights claims in this case shall be bifurcated. Until further notice, the civil rights claims shall proceed solely on the question of the liability of the individual "active" Defendants. Although discovery will be stayed as to the "inactive" Policymaker Defendants, they are expected to respond to discovery requests propounded to them relating to the liability of the individual Defendants.

VI.    Conclusion

11

For the reasons stated herein, the Court will, by separate Order filed this date:

(i)     GRANT IN PART AND DENY IN PART Chief Webster and Officer Hudson's
        motion to dismiss or, in the alternative, to bifurcate (Docket No. 12);

(ii)    GRANT IN PART AND DENY IN PART the City of Salisbury's motion to
        dismiss or, in the alternative, to bifurcate (Docket No. 13);

(iii)   DENY Wicomico County's motion to dismiss (Docket No. 14);

(iv)    GRANT IN PART AND DENY IN PART the Licensing Board and the Licensing
        Board members' motion to dismiss or, in the alternative, to bifurcate (Docket
        Nos. 22, 23, 24, 25, and 26); and

(v)     BIFURCATE Counts I, II, III, and IV against the City of Salisbury, Wicomico
        County, the Licensing Board, and Chief Webster, Officer Hudson, and the
        Licensing Board members in their official capacities for purposes of both
        discovery and trial.


Dated this 29th day of September, 2005.

                                    _____/s/_____
                                    Benson Everett Legg
                                    Chief Judge